**FILED**

**December 1, 2017**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 1:53 PM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| PATTY CALDWELL, | ) | Docket No. 2016-07-0672 |
| Employee, | ) | |
| v. | ) | |
| CAMPBELL ST. CHURCH | ) | |
| OF CHRIST, | ) | State File No. 20100-2016 |
| Employer, | ) | |
| and | ) | |
| STATE FARM INSURANCE CO., | ) | |
| Insurance Carrier. | ) | Judge Allen Phillips |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

Ms. Caldwell claimed a back injury at Campbell St. Church of Christ (CSC) and requested medical and temporary disability benefits. CSC contended the injury was not work-related and raised a notice defense. The Court conducted an Expedited Hearing on November 7, 2017, and holds Ms. Caldwell came forward with sufficient evidence to establish she likely would prevail at a hearing on the merits regarding entitlement to medical benefits. She did not establish entitlement to temporary benefits at this time.

### History of Claim

Ms. Caldwell worked for CSC as a custodian. On January 28, 2016, she and a fellow custodian, Michael Newsome, tried to lift a heavy "floor-riser." Ms. Caldwell said she "got her hands underneath it" but could only lift it "one-half inch." Mr. Newsome tried but could not lift his end.

The two differ as to Ms. Caldwell's reaction as she tried to lift the riser. Ms. Caldwell said she felt pain in her right hip so severe that she thought she fractured it and added she "never felt pain like that in her life." Conversely, Mr. Newsome did not see Ms. Caldwell make any indication that she hurt herself. He also did not recall her ever telling him that she hurt her back when lifting the riser. He only heard her complain of

1

back pain without saying what caused it. However, Mr. Newsome admitted he later told a church Elder that the incident "may have happened" the way Ms. Caldwell described.

Ms. Caldwell did not report the incident to CSC on January 28. Instead, she mentioned to "the ladies in the office" several days later that her back hurt. She did not tell them why. The office staff told Ms. Caldwell to try chiropractic care, which she did. She continued her regular work at the church.

Ms. Caldwell saw a chiropractor on February 8. She reported: "right hip pain [that] started at the beginning of last week. She mopped [the] gym floor last Monday & hasn't been right since." She also reported "severe traumas in the past," but the records contain no reference to the January 28 incident. Ms. Caldwell continued chiropractic care through mid-March.

Ms. Caldwell went to her personal physician, Dr. Cynthia Swaim, on February 16, who recorded that Ms. Caldwell suffered "severe" back pain but she had "not had any unusual activity [except] a lot of lifting and mopping at work." No mention was made of the January 28 incident.

On March 4, Ms. Caldwell went to the emergency room at Humboldt General Hospital because of increased pain that began "3 weeks ago" after "lifting" at work. A CT scan revealed a synovial cyst at the L4-L/5 level of her lumbar spine, and the interpreting radiologist noted it might be causing a "right L4 radiculopathy." The provider recommended Ms. Caldwell follow-up with Dr. Swaim for consideration of an MRI. Ms. Caldwell did so, and an MRI confirmed an L4/5 right-sided "degenerative synovial cyst" that "may result in right L4 and right L5 nerve impingement."

Ms. Caldwell testified that her husband reported her injury to David Baker, a church Elder, on February 26. Until that time, Ms. Caldwell and her husband were unaware of the seriousness of the injury. Moreover, she explained that she was not the type of person to complain of injuries and was "too ashamed" to report the incident. She testified she usually "toughed-out" pain.

Mr. Caldwell testified his wife told him about the incident the day it happened after he noticed she was limping after coming home from work. They thought she had a "pulled" muscle, but he reported her injury to Mr. Baker when she got worse. Mr. Caldwell believed he did so the day his wife went to the emergency room, but, when confronted with the emergency room record bearing a date of March 4, he questioned himself as to when he called. Regardless, he claimed, "everybody knew [Ms. Caldwell] had hurt her back." He also corroborated his wife's stoicism.

2

Betty Baker, the church's office manager, described Ms. Caldwell as a "fearless hard-worker" who was "always ready to help out" and was "absolutely honest and trustworthy." Ms. Baker had "no doubt" that Ms. Caldwell hurt her back and confirmed she learned about it on February 26 when David Baker, her husband, told her of Mr. Caldwell's call. Ms. Baker then undertook an investigation, which verified Ms. Caldwell's version including Mr. Newsome telling her that Ms. Caldwell "winced" when she tried to lift the riser. Ms. Baker completed a First Report of Injury that listed the date of injury as January 28 and the date of notice as February 26. Ms. Baker said Ms. Caldwell later quit her job over a wage issue.

After receiving notice, CSC's carrier provided Ms. Caldwell with a panel of physicians from which she chose Dr. John Brophy, a neurosurgeon. At a one-time visit on March 23, Dr. Brophy noted Ms. Caldwell told him about the January 28 incident and three prior occasions where manual labor at the church caused her pain. She provided no history of prior medical treatment or lost time. Dr. Brophy noted Ms. Caldwell told him her "right leg pain significantly increased in severity" after the January 28 incident. He could not say whether the aggravation of her pain was permanent.

Dr. Brophy confirmed the synovial cyst and explained in his deposition that these cysts form from fluid leaked from a spinal facet joint. He believed the cyst was degenerative and took some time to develop. Synovial cysts may compress a spinal nerve and cause radicular pain like Ms. Caldwell suffered. Though he did not believe the January incident caused an anatomic change to the cyst, he admitted the incident might cause the nerve to move "a little bit" and become irritated by the cyst.

Dr. Brophy offered surgical intervention, and Ms. Caldwell agreed given the severity of her pain. However, Dr. Brophy believed Ms. Caldwell's "personal insurance" should cover the surgery and stated that "more than fifty-one percent [of Ms. Caldwell's condition] was related to the degenerative changes." CSC then denied Ms. Caldwell's claim.

On July 5, Ms. Caldwell sought her own evaluation with Dr. Samuel Chung. Dr. Chung recorded both the history of lifting the floor riser and the earlier manual labor that caused Ms. Caldwell pain. He noted she told him that the January 28 incident caused "intense" pain that prevented her from working. Dr. Chung disagreed with Dr. Brophy's causation opinion by stating the January 28 "event aggravated any pre-existing condition she may have and increased the intensity of clinical symptoms[.]" He believed the aggravation arose primarily out of her employment, testifying that the work contributed more than fifty percent in causing her injury when considering all causes. Dr. Chung explained that the cyst creates a loss of blood flow to the nerve root and that irritation of the nerve by a lifting event might cause a "chemical change" to the nerve. (Ex. 1 at 63.)

He said a combination of these two anatomic changes, the cyst and the irritation, caused the radiculopathy in Ms. Caldwell's right leg.

Ms. Caldwell contended she established a greater than fifty-percent relation between her condition and the January 28 incident. She relied upon Dr. Chung's opinion and pointed to the fact that CSC never asked Dr. Brophy to consider whether the aggravation arose primarily out of the employment when "considering all causes," even though he identified no prior history of treatment or lost time prior to January 28. Ms. Caldwell asserted that any prior incidents at the church prompted feelings of pressure in her back but nothing like the significant pain that she now suffers. In short, she argued there was "but one cause" of her injury, the incident of January 28, and she should prevail under the expedited hearing standard.

Regarding the delayed notice and absence of complaints in medical records, Ms. Caldwell argued her stoic personality led to hesitancy in complaining about and/or reporting an injury. She noted Ms. Baker confirmed that personality trait and Ms. Baker also believed the incident happened. Finally, Ms. Caldwell argued she reported her injury within thirty days by CSC's own admission. She requested a panel of physicians to treat her condition, up to and including surgery.

CSC countered that Ms. Caldwell had "done anything but" establish she would prevail at a hearing on the merits. It noted she initially told no one of the event, failing to either promptly report it to the church or tell the chiropractor about it. It cross-examined Ms. Caldwell extensively regarding the dearth of information regarding the incident in the various medical records generated prior to her seeing Dr. Brophy. Instead, it argued the first history of the incident did not appear until March 8. Moreover, the chiropractor's records indicate a long history of back traumas that call into question the causation of her injury and make her history too "murky" to support an award.

As to medical proof, CSC argued Dr. Brophy's opinion is presumed correct because he is the authorized physician. Dr. Brophy said Ms. Caldwell's condition leading to the need for surgery is more than "fifty-one percent related to degenerative changes." Likewise, Dr. Chung could not point to an anatomic change in the cyst related to the incident. For these reasons, CSC asked the Court to deny Ms. Caldwell's request for benefits.

**Findings of Fact and Conclusions of Law**

Ms. Caldwell must come forward with sufficient evidence from which the Court can determine she is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2017).

4

*Notice*

At the hearing, CSC asserted a notice defense based upon the testimony of Mr. Caldwell.[1] Namely, because Mr. Caldwell testified he called a church Elder on the same day Ms. Caldwell visited the emergency room, a date established as March 4, CSC argued it did not receive notice until more than thirty days after January 28. The Court rejects CSC's argument. It finds Mr. Caldwell was mistaken in his testimony regarding the date he called the church. Ms. Baker credibly testified Mr. Caldwell notified the church through David Baker on February 26 and that she used that date for the First Report. CSC also admitted the February 26 date in sworn discovery responses. For these reasons, the Court holds CSC received notice of Ms. Caldwell's injury on February 26, within the thirty-day period applicable to injuries occurring in January 2016. *See* Tenn. Code Ann. § 50-6-201(a) (2016)(later amended to a fifteen-day period for injuries occurring on or after July 1, 2016).

*Causation*

The central legal issue is whether Ms. Caldwell presented sufficient evidence of a compensable aggravation. The Court finds that she did.

In so finding, the Court begins with the definition of a compensable aggravation in Tennessee Code Annotated section 50-6-102(14)(A). Namely, a compensable aggravation is one that, to a reasonable degree of medical certainty, arises primarily out of and in the course and scope of employment. To establish this connection, Ms. Caldwell must present expert medical evidence that the work incident "contributed more than fifty percent (50%)" in causing her need for medical treatment, meaning the work accident was more likely than not the cause when considering all other potential causes. Tenn. Code Ann. § 50-6-102(14)(C)-(D); *Miller v. Lowe's Home Centers, Inc.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *13 (Oct. 21, 2015). The aggravation need not be permanent for Ms. Caldwell to receive medical benefits. *Id.* at *18.

The medical evidence includes Dr. Chung's testimony that Ms. Caldwell's need for surgery arose primarily out of her employment. Dr. Brophy disagreed. "When faced with conflicting medical testimony, the Court must use its discretion in accepting one expert opinion over another and, in so doing, may consider which opinion contains the

---

[1] Tennessee Code Annotated section 50-6-239(b)(1) mandates the Court hear only issues "certified by a workers' compensation mediator within a dispute certification notice (DCN)." However, section 50-6-239(b)(2) provides an exception and allows the Court to hear issues not included in a DCN when 1) a party did not have knowledge of the issue when the DCN was issued and, 2) when prohibiting presentation of the issue would result in substantial injustice to the party seeking to raise it. Here, CSC raised the issue of notice only after Mr. Caldwell's trial testimony, of which it could not have been aware when the mediator issued the DCN. Thus, the Court allowed CSC to argue that Ms. Caldwell provided inadequate notice.

5

more probable explanation." *Sanker v. Nacarato Trucks, Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *12 (July 6, 2016). Further, and of particular importance here, Tennessee law has long held that medical proof is not to be "read and evaluated in a vacuum" but, instead "must be considered in conjunction with the lay testimony of the employee as to how the injury occurred and the employee's subsequent condition." *Thomas v. Aetna Life and Cas. Co.,* 812 S.W.2d 278, 283 (Tenn. 1991).

The Court finds Dr. Chung offered the more probable explanation regarding causation. He explained his opinion in detail as to why the incident of January 28, superimposed on the synovial cyst, caused Ms. Caldwell's radicular pain. This explanation fits with Ms. Caldwell's testimony that she did not have disabling pain before January 28 but after that date encountered pain like she never felt before. Further, the Court finds the evidence preponderates in favor of the incident occurring as she alleged based upon her testimony and Ms. Baker's.

The Court recognizes Dr. Brophy's causation opinion is presumed correct subject to rebuttal by a preponderance of the evidence. *See* Tenn. Code Ann. § 50-6-102(14)(E). The Court finds Dr. Chung's opinion rebuts the opinion of Dr. Brophy based upon the above findings. Additionally, though the Court agrees with CSC that the work did not cause the cyst, the evidence preponderates in favor of a finding that it did cause the disabling radicular pain contrary to Dr. Brophy's opinion.

Moreover, beyond any presumption, the Court finds adequate proof of causation in Dr. Brophy's own testimony. Specifically, he said an event such as the incident of January 28 can cause "the nerve to move[] a little bit and [become] irritated by the synovial cyst." This is similar to Dr. Chung's theory and fits the sequence of events as the more probable explanation of causation. By history, Dr. Brophy said Ms. Caldwell's work aggravated her pain, and on cross-examination he agreed that Ms. Caldwell's leg pain was more severe after the incident. All of this testimony is inconsistent with an opinion that the incident did not contribute greater than 50% to the cause of Ms. Caldwell's "need for treatment."

This result finds support in *Miller,* where the employee had no prior difficulties with the injured body part before an incident but afterwards had radiating pain that resulted in a need for surgery. *Miller,* at *12-14. This is contrasted with *Bass v. Home Depot,* 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *14 (May 26, 2017), where the employee had exactly the same diagnosis before the incident as afterwards, and there was no indication for surgery because of the incident.

Finally, the lay testimony supports an award of medical benefits. The Court finds Ms. Caldwell credible regarding both her explanation of the incident and of her pain. She was forthcoming and testified honestly and self-assuredly. *Kelly v. Kelly,* 445 S.W.3d

6

685, 695-696 (Tenn. 2014). Ms. Caldwell said she never injured her back or required medical treatment for it before the January 28 incident, and the Court believes her. Further, the Court carefully observed Ms. Caldwell's physical demeanor when seated in the witness chair and elsewhere in the courtroom. She appeared to be in legitimate pain, neither exaggerating nor embellishing her complaints. She moved about after approximately twenty minutes and then frequently shifted positions or stood. These movements appeared to be legitimate, not feigned, attempts to relieve her discomfort. The Court also believes her husband's corroborating testimony regarding both her stoic nature and of the effects of her injury. Finally, the Court finds Ms. Baker credible when she testified that Ms. Caldwell was hard-working and trustworthy. As a representative of CSC, she believed Ms. Caldwell hurt her back when lifting the riser and the Court accredits that testimony.

For these reasons, the Court holds Ms. Caldwell came forward with sufficient evidence to establish she would prevail at a hearing on the merits regarding causation.

*Medical benefits*

Under the Workers' Compensation Law, "the employer . . . shall furnish . . . such medical and surgical treatment . . . made reasonably necessary by accident[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A). Further, Employers are required to offer a panel of physicians "from which the injured employee shall select one (1) to be the treating physician." Tenn. Code Ann. § 50-6-204(a)(3)(A)(i). Here, the parties stipulated that CSC provided Ms. Caldwell a panel of physicians and that she chose Dr. Brophy. The Court will not require CSC to provide another panel. Thus, the Court holds CSC shall continue to pay for Ms. Caldwell's treatment with Dr. Brophy, including the recommended surgery.

*Temporary disability benefits*

To establish entitlement to temporary benefits, Ms. Caldwell must show she (1) became disabled from working due to a compensable injury, (2) a causal connection between that injury and her inability to work, and (3) the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). Ms. Caldwell has not established any of these elements, and the Court denies her request for temporary disability benefits at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. CSC shall provide Ms. Caldwell with reasonable and necessary medical treatment under Tennessee Code Annotated section 50-6-204(a)(1)(A). Dr. Brophy shall remain the authorized treating physician and he, or Ms. Caldwell, shall provide

future billing to CSC.

2. The Court denies Ms. Caldwell's request for temporary disability benefits at this time.

3. This matter is set for a Status Hearing on **Wednesday, February 14, 2018, at 9:30 a.m. Central time. You must call 731-422-5263 or toll-free 855-543-5038 to participate in the Hearing.**

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED this the 1st day of December, 2017.**

**Allen Phillips, Judge**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:

1. Deposition of Dr. Samuel J. Chung
2. Deposition of Dr. John Brophy
3. Medical records of Joyner Chiropractic
4. Medical records of Humboldt General Hospital
5. Medical Records of Jackson Clinic (February 16, 2016)
6. Medical Records of Jackson Clinic-MRI (March 8, 2016)
7. Copy of Employer's Interrogatory Answer #14
8. Intake Form from Joyner Chiropractic
9. First Report of Work Injury

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Order Continuing Compensation Hearing
4. Request for Expedited Hearing
5. Employer's Pre-Expedited Hearing Brief
6. Employer's Pre-Expedited Hearing Disclosures
7. Employee's Pre-Expedited Hearing Brief
8. Employee's List of Witnesses and Exhibits
9. Order Continuing Expedited Hearing

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 1st day of December, 2017.

| Name | Via   Email | Service Sent To: |
|------|-------------|------------------|
| Edward L. Martindale, Jr., Esq., Attorney for Employee | X | edwardlmartindale@gmail.com rachalmwallace@gmail.com |
| Robert O. Binkley, Jr., Esq., Attorney for Employer | X | rbinkley@raineykizer.com akail@raineykizer.com |

Penny Shrum, Clerk of Court
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**